UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DIVERSIFIED CONTROL, INC.,

                                   Plaintiff,

- vs -

CORNING CABLE SYSTEMS, LLC,

                                   Defendant.

**NOTICE OF REMOVAL**

Civil Action No.
_____

TO THE ABOVE NAMED PLAINTIFF:

      PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446(a), defendant Corning Cable Systems, LLC ("Corning") by its attorneys, Nixon Peabody LLP, hereby removes the above captioned action from the State of New York, Supreme Court, County of Erie, to the United States District Court for the Western District of New York on the following grounds:

      1.     Less than 30 days have elapsed since the receipt of the Summons and Complaint by Corning Cable Systems, LLC. Upon information and belief, the Secretary of State of New York was served on behalf of defendant Corning Cable Systems, LLC on the 28th day of March, 2005.

      2.     No further proceedings have taken place in the New York State Supreme Court action. A copy of the Summons and Complaint is attached hereto as Exhibit A. A review of the Erie County Clerk's Office file reveals that the only document on file with the Clerk's Office besides the Summons and Complaint is an administrative form, Application for Index Number. An index of documents on file with the Erie County Clerk's Office is attached as Exhibit B.

      3.     Upon information and belief, plaintiff Diversified Control, Inc. is a New York corporation, with its principal place of business located in Orchard Park, New York. (See Exhibit A, ¶ 1.)

B84269.1

4.      Defendant Corning Cable Systems is a limited liability company and for purposes of diversity jurisdiction, the citizenship of each of its members must be diverse from the plaintiff's New York citizenship.  See e.g. Handelsman v. Bedford Village Assocs. Ltd. Pshp., 213 F.3d 48 (2d Cir. 2000).

5.      Defendant Corning Cable Systems, LLC is comprised of two owners or members: Corning Cable Systems International, Corp. a North Carolina corporation, with its principal place of business located in Hickory, North Carolina and CCS Holdings, Inc., a Delaware corporation with its principal place of business in Delaware.

6.      Based upon communications with the plaintiff's counsel, plaintiff Diversified Control, Inc. seeks to recover a sum that exceeds $75,000.

7.      Thus, pursuant to 28 U.S.C. § 1441, the District Court for the Western District of New York has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) due to the parties' diversity of citizenship.

WHEREFORE, the defendant hereby removes this action from the State of New York Supreme Court, County of Erie to the United States District Court for the Western District of New York.

DATED:     Buffalo, New York
           April 22, 2005                    Nixon Peabody LLP

                                                    /s/ Susan C. Roney
                                             By_____
                                                 Susan C. Roney, Esq.
                                             Attorneys for Defendant
                                             Key Towers at Fountain Plaza
                                             40 Fountain Plaza, Suite 500
                                             Buffalo, New York  14202
                                             Telephone:  (716) 853-8100
                                             e-mail:  sroney@nixonpeabody.com

B84269.1

TO:    John J. Keenan, Esq.
Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria LLP
Attorneys for Plaintiff
42 Delaware Avenue, Suite 300
Buffalo, New York   14202-3857
(716) 849-1333 (ext. 460)
e-mail: jkeenan@lglaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DIVERSIFIED CONTROL, INC.,

                                            Plaintiff,

- vs -

CORNING CABLE SYSTEMS, LLC,

                                              Defendant.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the 22nd day of April, 2005 a copy of the Notice of Removal was securely enclosed in a post paid wrapper in a Post Office Box regularly maintained by the United States Government at Buffalo, New York, in said County of Erie, directed to the following:

TO:    John J. Keenan, Esq.
        Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria LLP
        Attorneys for Plaintiff
        42 Delaware Avenue, Suite 300
        Buffalo, New York  14202-3857
        (716) 849-1333 (ext. 460)
        e-mail: jkeenan@lglaw.com

                                            Nixon Peabody LLP

                                                      /s/ Susan C. Roney
                                            By_____
                                               Susan C. Roney, Esq.
                                            Attorneys for Defendant
                                            Key Towers at Fountain Plaza
                                            40 Fountain Plaza, Suite 500
                                            Buffalo, New York  14202
                                            Telephone:  (716) 853-8100
                                            e-mail: sroney@nixonpeabody.com

B84269.1

**EXHIBIT A**

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

---

DIVERSIFIED CONTROL, INC.
3333 California Road
Orchard Park, New York 14127

           Plaintiff,

v.

CORNING CABLE SYSTEMS, LLC
489 Siecor Park
Hickory, North Carolina 28603,

           Defendant.

**SUMMONS**

Index No. I 2005-2782

---

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer on plaintiff's attorneys within Twenty (20) days after service of this summons, exclusive of the day of service, or within Thirty (30) days after completion of service where service is made in any other manner than by personal delivery within the State of New York.

In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Erie County is designated as the place of trial. The basis of venue is pursuant to CPLR §503(a) and the business address of the Plaintiff.

DATED:   Buffalo, New York
          March 14, 2005

                              LIPSITZ, GREEN, FAHRINGER,
                              ROLL, SALISBURY & CAMBRIA LLP

         By: _____
                John J. Keenan, Esq.
                Attorneys for Plaintiff
                42 Delaware Avenue, Suite 300
                Buffalo, New York 14202-3857
                (716) 849-1333 [Ext. 460]

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

---

DIVERSIFIED CONTROL, INC.
3333 California Road
Orchard Park, New York 14127,

              Plaintiff,

v.

CORNING CABLE SYSTEMS, LLC
489 Siecor Park
Hickory, North Carolina 28603,

              Defendant.

COMPLAINT

Index No.

---

Diversified Control, Inc., by and through its attorneys Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, LLP, complaining of the defendant Corning Cable Systems, LLC, alleges as follows:

1. The plaintiff Diversified Control, Inc. ("Diversified") is a corporation organized and existing under the laws of the State of New York with a principal place of business at 3333 California Road, Orchard Park, Erie County, New York 14127.

2. The defendant Corning Cable Systems ("Corning") is a foreign limited liability company organized and existing under the laws of the state of North Carolina and authorized by the Secretary of State of New York to do business within the state of New York. The principal offices of Corning Cable Systems, LLC are located at 489 Seicor Park, Hickory, North Carolina, 28603.

3. Corning did business within the State of New York by contracting for goods and/or services within the state.

4. Diversified is a producer of "pedestals" which are used in the telephone and cable television industry.

5. Pedestals are boxes placed at various points along the distribution cable and are used to provide access and distribution of cable television or telephone signals to the homes of individual customers.

6. Diversified holds a patent for a particular type of pedestal cover and locking mechanism. The cover provides both protection from the elements and security for the wiring inside the pedestal.

7. Diversified's pedestals have a sliding access cover which incorporates a spring-loaded locking mechanism. A technician who has accessed the wiring within the pedestal is able to replace the cover and lock it securely in one fluid motion.

8. The mechanism can be unlocked with a "key." A key is a socket which mates with the patented locking mechanism on the pedestal cover and allows a technician who possesses a key with the specific proprietary characteristics to remove the pedestal cover with less than a full turn of the key.

9. Diversified developed specific, proprietary key patterns which it used on its products

10. In order to provide security to the telephone and cable television systems using Diversified's pedestals and to prevent pilfering or tampering by unauthorized persons, sales of specific, proprietary combination keys and matching locks were sold to certain cable or telephone companies only.

11. Additionally, Diversified limited sales of specific key patterns to certain, limited geographic areas. These geographic restrictions enhanced the security aspects of Diversified's product.

12. Diversified allowed companies purchasing the pedestals to buy only one key for installation purposes.

13. Key sales to end users were strictly controlled by Diversified.

14. The primary security protection for the end user companies was the fact that the keys had proprietary patterns and access to the keys was strictly regulated by Diversified.

15. Corning entered into a purchase agreement ("the contract") with Diversified, on or about the 22nd day of February 2001.

16. Corning agreed in the contract that it would not duplicate the proprietary characteristics of Diversified's products. A copy of that agreement is attached as **Exhibit A**.

17. As a term of the contract, Diversified required that Corning agree that products purchased from Diversified "will not be duplicated by your organization or any third party under your control."

18. For many months, Corning continued to purchase pedestals and installation keys from Diversified.

19. At some time subsequent to the signing of the contract, Corning began to produce pedestals for its own use and for sale to third parties. Corning's products replicated the proprietary characteristics of Diversified's locking mechanisms.

## AS AND FOR A FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

20. Plaintiff repeats and realleges paragraphs 1 through 19 as if fully set forth herein.

21. As previously alleged, Diversified and Corning entered into an agreement (the contract) under which Diversified was to supply certain materials.

3

22. Subsequent to the signing of the contract, and pursuant to purchase order, Diversified shipped numerous locks and keys containing proprietary characteristics to Corning.

23. Those locks and keys had proprietary characteristics which were the property of Diversified.

24. Corning subsequently, and in breach of their contract with Diversified, duplicated the products purchased from Diversified and began to sell copies of those products incorporating Diversified's proprietary characteristics.

25. In duplicating the product, Corning made modifications which corrupted the proprietary features of Diverisfied's mechanism thereby compromising the security features of the system.

26. Corning's actions lessened the effectiveness of the security protections which made Diversified's products attractive and valuable.

27. Corning sold large numbers of the duplicated items which employed Diversified's proprietary characteristics in violation of the contract without regard for the strict geographic restrictions or the other restrictions which Diversified employed to maintain the security of its customers.

28. By its actions, Corning has defeated the utility of the security aspects of Diversified's product which formed an integral part of its sales plan.

29. The actions of Corning have damaged the usefulness and utility of the proprietary characteristics of Diversified's products and lessened the effectiveness of the security protections afforded to end users who purchased products from Diversified both previous to and subsequent to the time when Corning breached the contract.

30. The actions of Corning were and are a material breach of the contract with Diversified.

31. Corning's actions have resulted in the loss of numerous sales by Diversified to both existing and prospective customers.

32. On account of the foregoing, Diversified has incurred damages the precise monetary amount of which is to be determined upon the trial of this matter.

## AS AND FOR A SECOND CAUSE OF ACTION

### BREACH OF FAITH

33. Plaintiff repeats and realleages paragraphs 1 through 32 as if fully set forth herein.

34. As previously alleged, Corning improperly and as part of a breach of contract appropriated and duplicated the proprietary characteristic of products manufactured by Diversified.

35. As previously alleged, in duplicating the product, Corning made modifications which corrupted the proprietary features of Diverisfied's mechanism thereby compromising the security features of the system.

36. Corning then sold those products which it manufactured and which duplicated the proprietary characteristics of Diversified's products in the marketplace.

37. Corning's actions damaged the utility of the security protections which made Diversified's products attractive and valuable.

38. Because of Corning's actions, Diversified has lost substantial amounts of sales to third parties.

39. Because of Corning's actions, Diversified will continue in the future to lose sales of its products to third parties.

40. The actions of Corning constitute an unfair trade practice and amount to a breach of faith.

41. On account of the foregoing, Diversified has suffered damages, the precise monetary amount of which will be determined upon the trial of this matter.

## AS AND FOR A THIRD CAUSE OF ACTION

### INJUNCTIVE RELIEF

42. Plaintiff repeats and realleges paragraphs 1 through 41 as if fully set forth herein.

43. As previously alleged, Corning improperly and as part of a breach of contract appropriated and duplicated the proprietary characteristic of products manufactured by Diversified.

44. As previously alleged, in duplicating the product, Corning made modifications which corrupted the proprietary features of Diverisfied's mechanism thereby compromising the security features of the system.

45. Corning's actions have damaged the utility and usefulness of the security aspects of Diversified's products.

46. Corning has sold and is continuing to sell products which were developed by committing a breach of Corning's contract with Diversified.

47. Corning has sold and is continuing to sell products without regard to the geographic restrictions which are normally employed by Diversified

48. Each duplicated item sold by Corning makes the security system developed by Diversified less efficacious and effective.

49. Each duplicated item sold by Corning without regard to geographic restrictions and other restrictive sales practices makes the security system developed by Diversified less efficacious and effective.

50. The actions of Corning constitute an unfair business practice which amount to a breach of faith.

51. Diversified is suffering a continuing wrong because of Corning's actions and has incurred substantial damages.

52. Diversified will continue to incur damages in the future if Corning continues to sell the duplicated products.

53. The damages which Corning has incurred and will continue to incur cannot be fully compensated by a monetary award.

54. On account of the foregoing, Diversified requests an order of this Court preliminarily enjoining the defendant Corning from selling cable boxes with locks and the matching keys created by duplicating the proprietary characteristics of the products manufactured by Diversified until this matter can be decided at trial.

55. Further, Diversified requests an order of this court permanently enjoining the defendant Corning from cable boxes with locks and the matching keys created by duplicating the proprietary characteristics of the products manufactured by Diversified.

## AS AND FOR A FOURTH CAUSE OF ACTION

## UNFAIR TRADE PRACTICES PURSUANT TO GENERAL BUSINESS LAW § 349

56. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

57. Corning has duplicated the proprietary characteristics of Diversified's equipment and/or materials.

58. As previously alleged, in duplicating the product, Corning made modifications which corrupted the proprietary features of Diverisfied's mechanism thereby compromising the security features of the system.

59. As previously alleged, Corning then sold the duplicated products without regard to the geographic restrictions or other restrictions which Corning had adopted to enhance security.

60. The actions of Corning have resulted in the lessening of the value of the security and other aspects of Diversified's products not only to Diversified but also to Diversified's customers.

61. Numerous end user companies have purchased equipment from Diversified with the understanding and expectation that they could rely on the security provided by the proprietary characteristics of Diversified's products and Diversified's restrictive geographic distribution practices and other restrictive practices.

62. A significant consumer aspect is therefore involved in this litigation.

63. Corning's actions in selling and duplicating Diversified's proprietary features and by violating Diversified's restrictive distribution practices have injured both Diversified and its customers.

64. Corning's actions constitute an unfair trade practice under New York State General Business Law §349.

65. On account of the foregoing, Diversified has been damaged the precise amount of which is to be determined at the trial of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH THIRD PARTY CONTRACTUAL RELATIONS

8

66. Plaintiff repeats and realleges paragraphs 1 through 65 as if fully set forth herein.

67. As previously alleged, Corning duplicated the proprietary characteristics of Diversified's products in breach of a material term of the contract between the parties.

68. As previously alleged, in duplicating the product, Corning made modifications which corrupted the proprietary features of Diverisfied's mechanism thereby compromising the security features of the system.

69. Diversified had an ongoing and continuing contractual relationship with third parties to whom it sold its products.

70. Corning tortiously interfered with Diversified's contractual relations with third parties by lessening the effectiveness of Diversified's security measures which were secured by its products proprietary characteristics and Diversified's distribution practices.

71. Diversified's products are less attractive to the third parties with whom Diversified had a continuing and ongoing contractual relationship because Diversified's security protections have been rendered ineffective by Corning's actions.

72. The actions of Corning have caused customers with whom Diverisifed had an ongoing contractual relationship not to purchase Diversified's products.

73. On account of the foregoing, Diversified has been damaged, the precise monetary amount of which is to be determined upon the trial of this matter.

WHEREFORE, Diversified Control, Inc. requests judgment of this Court against the defendant Corning Cable Systems, LLC as follows:

a) On the first cause of action, an award of monetary damages the precise amount of which is to be determined upon the trial of this matter;

b) On the second cause of action, an award of monetary damages the precise amount of which is to be determined upon the trial of this matter;

c) On the third cause of action, a preliminary and a permanent injunction restraining Corning from selling products employing Diversified's proprietary characteristics;

d) On the fourth cause of action, monetary damages the precise amount of which is to be determined upon the trial of this matter.

e) On the fifth cause of action, monetary damages the precise amount of which is to be determined upon the trial of this matter;

f) Attorneys' fees;

g) Costs and disbursements; and

h) Such other and further relief as to the Court seems just.

DATED:  Buffalo, New York
        March 14, 2005

                                LIPSITZ, GREEN, FAHRINGER,
                                ROLL, SALISBURY & CAMBRIA LLP


                        By:     _____
                                John J. Keenan, Esq.
                                Attorneys for Plaintiff
                                42 Delaware Avenue, Suite 300
                                Buffalo, New York 14202-3857
                                (716) 849-1333 [Ext. 460]

State of New York - Department of State
Division of Corporations

Party Served:
CORNING CABLE SYSTEMS LLC

Plaintiff/Petitioner:
DIVERSIFIED CONTROL, INC.

C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NY 12207-2543

Dear Sir/Madam:
Enclosed herewith is a legal document which was served upon the Secretary of State on 03/28/2005 pursuant to SECTION 303 OF THE LIMITED LIABILITY COMPANY LAW. This copy is being transmitted pursuant to such statute to the address provided for such purpose.

Very truly yours,
Division of Corporations

**EXHIBIT B**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| DIVERSIFIED CONTROL, INC., | |
|---|---|
| Plaintiff, | INDEX TO DOCUMENTS FILED IN NEW YORK STATE SUPREME COURT ACTION |
| - vs - | |
| CORNING CABLE SYSTEMS, LLC, | |
| Defendant. | |

A review of the New York State Supreme Court, Erie County action bearing the above caption under Index Number I2005-2782 reflects filing of the following documents:

| DOCUMENT | DATE FILED | EXHIBIT NO. (attached hereto) |
|---|---|---|
| Application for Index Number | 3/16/05 | |
| Summons and Complaint | 3/16/05 | A |

B84269.1