UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIVERSIFIED CONTROL, INC.

                Plaintiff

vs.                                   Case No.:  05-CV-0277A (MC)

CORNING CABLE SYSTEMS, INC.

                Defendant.
_____

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER

LIPSITZ GREEN SCIME CAMBRIA LLP
DIANE M. ROBERTS, ESQ.
JOSEPH J. MANNA, ESQ.
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT........................................................................................................................2

    POINT I:    THE E-MAILS IN QUESTION ARE PROTECTED AS CONFIDENTIAL COMMUNICATIONS BY THE ATTORNEY CLIENT PRIVILEGE. .................................................................2

        A.    Privileged communications were made among and between Mr. James and his attorneys regarding confidential litigation matters. ..........................................................................................................3

        B.    Diversified has not waived its attorney-client privilege even though Corning has obtained possession of the e-mails in question. ........................................................................................................4

        C.    The communications among and between Mr. James and his attorneys, when viewed in their full content and context, fully concern legal advice and strategy because they address matters relating to this litigation and its commencement ..................................4

CONCLUSION ....................................................................................................................9

**PRELIMINARY STATEMENT**

The giving of "legal advice" is an element necessary to invoke the attorney-client privilege. The prior motion practice in the instant action concerning privileged e-mails did not result in a decision which requires that every single communication between attorney and client should be viewed in isolation, such that each would be required to contain legal advice in the form of legal research, legal theory, and case citations in order to invoke the privilege. To generically find otherwise would defeat the underlying purpose of the attorney-client privilege.

On August 25, 2009, Diversified produced e-mails to Corning as a "Supplemental Discovery Production," together with a "Privilege Log" specifying five (5) e-mails which Plaintiff asserted were privileged as between attorney/client and/or attorney work product. (See Privilege Log at Exhibit 1 to Roberts Affidavit). Until counsel was in Chambers on February 10, 2010, with opposing counsel, Plaintiff's counsel did not learn that its forensics expert had apparently inadvertently not removed the privileged e-mails from the disk it provided for production to Corning. (See Roberts Affidavit at ¶ 6-7).

Based upon the contents of those e-mails and the referenced attachments set forth in the e-mails, it is Diversified's continued position that the e-mails with their attached documents are privileged. Accordingly, with the exception of three sets of attachments which Diversified has agreed to produce, Diversified should not be required to produce, and Corning should not be allowed access to, or use of, the five e-mails set forth on Plaintiff's August 25, 2009 Privilege Log, or the two sets of attachments to the January 20, 2005 and February 8, 2005 emails.

1

# ARGUMENT

## POINT I

### THE E-MAILS IN QUESTION ARE PROTECTED AS CONFIDENTIAL COMMUNICATIONS BY THE ATTORNEY CLIENT PRIVILEGE

"A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) (see also *Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 461-62 (W.D.N.Y. 2006)). "Pursuant to Rule 501 of the Federal Rules of Evidence, substantive questions of privilege . . . are governed by New York State law." *ABB Kent-Taylor, Inc. v. Stallings & Co.*, 172 F.R.D. 53, 54 (W.D.N.Y. 1996) (see also *Hendrick v. Avis Rent A Car Sys., Inc.*, 944 F. Supp. 187, 188 (W.D.N.Y. 1996)).

"New York State recognizes the attorney client privilege via statute." *Hendrick v. Avis Rent A Car System, Inc.*, 944 F. Supp. 187, 188 (W.D.N.Y. 1996). Indeed, New York "CPLR 4503(a)[1] states that a privilege exists for confidential communications made between attorney

---

[1] New Civil Practice Laws and Rules Section 4503(a) provides:

> (a) 1. Confidential communication privileged. Unless the client waives the privilege, an attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action, disciplinary trial or hearing, or administrative action, proceeding or hearing conducted by or on behalf of any state, municipal or local governmental agency or by the legislature or any committee or body thereof. Evidence of any such communication obtained by any such person, and evidence resulting therefrom, shall not be disclosed by any state, municipal or local governmental agency or by the legislature or any committee or body thereof. The relationship of an attorney and client shall exist between a professional service corporation organized under article fifteen of the business corporation law to practice as an attorney and counselor-at-law and the clients to whom it renders legal services.

N.Y. C.P.L.R. 4503(a)(1).

and client in the course of professional employment, and CPLR 3101(b)[2] vests privileged matter with absolute immunity." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377 (1991) (see also *N.Y. Times Newspaper Div. v. Lehrer McGovern Bovis, Inc.*, 300 A.D.2d 169, 171, 752 N.Y.S.2d 642, 644-45 (1st Dept. 2002)).

Here, in connection with the arguments that follow, Diversified satisfies each necessary element to invoke the attorney-client privilege regarding the five e-mails in question and the attachments to two of these e-mails. Consequently, according to New York State law, the five e-mails in question and the attachments to two of them, deserve absolute immunity.

A. **Privileged communications were made among and between Mr. James and his attorneys regarding confidential litigation matters**

"[W]hile the cases largely concern communications by clients to their attorneys, CPLR 4503 speaks of communications 'between attorney * * * and the client' (CPLR 4503 [a] ), and the privilege thus plainly extends as well to the attorney's own communications to the client." *Rossi v. Blue Cross & Blue Shield*, 73 N.Y.2d 588, 592 (1989) (see also *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377 (1991)). Consequently, "[c]ommunications from an attorney to a client may also fall within the privilege if to disclose them would directly or indirectly reveal the substance of a confidential communication by the client, and if it was considered to be confidential by the client." *Tisby v. Buffalo Gen. Hosp.*, 157 F.R.D. 157, 168 (W.D.N.Y. 1994) (citations omitted).

---

[2] New York Civil Practice Laws and Rules Section 3101(b) provides:

> (b) Privileged matter. Upon objection by a person entitled to assert the privilege, privileged matter shall not be obtainable.

N.Y. C.P.L.R. 3101(b).

In this case, there is no dispute that the five e-mails in question were sent to attorneys by their client and President of Diversified, Mr. James (see Roberts Affidavit at ¶¶ 10-14). Accordingly, there has been a confidential communication between attorney and client, thus, satisfying the first element of the test.

B. **Diversified has not waived its attorney-client privilege even though Corning has obtained possession of the e-mails in question.**

Plaintiff believes Corning will not take the position that the privilege has been waived on the basis that Corning has obtained possession of these e-mails; Corning's position, to Plaintiff's knowledge, is that the e-mail attachments are not privileged. Accordingly, the sole issue raised by this motion is to insure the privilege applies to these five e-mails and to assert that it applies as well to the attachments to two of those e-mails.

Accordingly, the second element of the test is not at issue in this matter because Diversified intended the communications to be kept confidential.

Based on the foregoing, it is evident that the main issue here concerns the third element of the test: whether the communications were made for the purpose of obtaining or providing legal advice.

C. **The communications among and between Mr. James and his attorneys, when viewed in their full content and context, fully concern legal advice and strategy because they address matters relating to this litigation and its commencement.**

"In order for the privilege to apply, the communication from attorney to client must be made 'for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship.'" *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377-78

(1991) (quoting *Rossi v. Blue Cross & Blue Shield*, 73 N.Y.2d 588, 593 (1989)). "Legal advice within the context of the privilege means an opinion of law, legal services or assistance in a legal proceeding." *Boller v. Barulich*, 147 Misc. 2d 502, 504, 557 N.Y.S.2d 833, 836 (Civil Ct. 1990) (citations omitted) (see also *In re Bekins Storage*, 118 Misc. 2d 173, 177, 460 N.Y.S.2d 684, 690 (Sup. Ct. 1983)). Certainly, "[t]he critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 379 (1991).

Additionally, "[l]egal advice is often sought, and rendered, precisely to avoid litigation, or facilitate compliance with the law, or simply guide a client's course of conduct." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 380 (1991). "Similarly, the absence of legal research in an attorney's communication is not determinative of privilege, so long as the communication reflects the attorney's professional skills and judgments." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 380 (1991) (see also *Rossi v. Blue Cross & Blue Shield*, 73 N.Y.2d 588, 594 (1989)).

Consequently, "[i]n giving [legal] advice to a client, the role of an attorney is certainly not restricted to citing cases and espousing legal theories." *ABB Kent-Taylor, Inc. v. Stallings & Co.*, 172 F.R.D. 53, 56 (W.D.N.Y. 1996). "A lawyer's advice to his client . . . is an amalgamation of education, knowledge, experience and legal wisdom which counsel may draw upon to give a frank and unconstrained opinion." *ABB Kent-Taylor, Inc. v. Stallings & Co.*, 172 F.R.D. 53, 57 (W.D.N.Y. 1996) (see also *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 380 (1991)). "That is the essence of effective legal representation." *ABB Kent-Taylor, Inc. v. Stallings & Co.*, 172 F.R.D. 53, 56 (W.D.N.Y. 1996).

"The attorney-client privilege is 'the oldest of the privileges for confidential communications known to the common law.'" *US v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997) (quoting *Upjohn Co. v. US*, 449 U.S. 383, 389 (1981)) (see also *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377 (1991)). Moreover, "[t]he policy of the privilege today is grounded upon the necessity of providing for the client's freedom of apprehension in consulting his legal advisor." *In re Lanza*, 6 Misc. 2d 411, 413, 163 N.Y.S.2d 576, 580 (Sup. Ct. 1957) (emphasis in original omitted).

Thus, "[the attorney-client privilege] exists to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment." *Priest v. Hennessy*, 51 N.Y.2d 62, 67-68 (1980) (citations omitted). Consequently, "[t]he privilege 'is intended to foster openness between counsel and client so that legal problems can be thoroughly and accurately analyzed.'" *Hendrick v. Avis Rent A Car Sys., Inc.*, 944 F. Supp. 187, 188 (W.D.N.Y. 1996) (quoting *Matter of Vanderbilt*, 57 N.Y.2d 66, 76 (1982)) (see also *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377 (1991) ("The attorney-client privilege . . . fosters open dialogue between lawyer and client that is deemed essential to effective representation.")).

Indeed, "the privilege is not narrowly confined to the repetition of confidences that were supplied to the lawyer by the client." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 379 (1991) (citations omitted). "That cramped view of the attorney-client privilege is at odds with the underlying policy of encouraging open communication; it poses inordinate practical difficulties in making surgical separations so as not to risk revealing client confidences; and it denies that an attorney can have *any* role in fact-gathering incident to the rendition of legal advice and services." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 379 (1991)

(emphasis in original) (citations omitted) (see also *N.Y. Times Newspaper Div. v. Lehrer McGovern Bovis, Inc.*, 300 A.D.2d 169, 171-72, 752 N.Y.S.2d 642, 645 (1st Dept. 2002)).

In the earlier Decision and Order in this action concerning other specific emails and privilege issues, primary reliance was placed on two unpublished decisions: (1) *Urban Box Office Networks, Inc. v. Interfase Managers, L.P.*, No. 01 Civ. 8854(LTS)(THK), 2006 WL 1004472 (S.D.N.Y. Apr. 17, 2006); and (2) *ECDC Envtl., L.C. v. New York Marine & Gen. Ins. Co.*, No. 96CIV.6033(BSJ)(HBP), 1998 WL 614478 (S.D.N.Y. June 4, 1998).

Indeed, the earlier decision on two different emails quoted *Urban Box Office*, stating that "'[a]n attorney's communication to a client reporting facts learned by the attorney from a third party is not within the attorney-client privilege *unless the information is included in legal analysis or advice communicated to the client*'" (emphasis added). Quoting from *ECDC Envtl.*, the earlier decision provided that "documents [which] merely convey factual information to plaintiff *without any legal analysis or legal advice*" are "not within the attorney-client privilege." (emphasis added).

The five e-mails in question, and the two sets of attachments, differ in *toto* from those this Court reviewed in connection with the earlier decision on privileged e-mails. These e-mails do not in any way convey information from a third-party to Mr. James or vice-versa. Plaintiff has submitted the five e-mails, two of them with their non-disclosed attachments, to the Court for an *in camera* inspection. The Court will readily see that the e-mails do, in fact, convey attachments from Mr. James to his various attorneys involved in one way or another with the assessment of the situation which led to the commencement of this very action.

The Roberts Affidavit directs the Court's attention to the significance of the timing of these e-mails. This action was filed in the Western District of New York on March 16, 2005.

7

The e-mails in question all focus on Mr. James sending information to his attorneys to assess Diversified's rights and to develop litigation strategies and pleadings, all of which culminated in the filing of this suit on March 16, 2005. The e-mails with their attachments were all sent to the Company's attorneys within a three month span pre-dating the actual filing of this suit, and shortly after its filing.

The relevant case law detailed above is clear on one very important point: when reviewing and assessing the privileged status of a particular communication, it must be viewed not in isolation, but rather as part of the overall communication process – the back and forth – between a client and their attorney. Here, that back and forth all related to exchanges of information and discussions, via e-mail, concerning assessment of a potential claim or claims to protect Diversified's business interests, and ultimately to develop and commence a lawsuit based in part on the information conveyed in these emails with their attachments.

It is respectfully submitted that this Court should not engage in a piecemeal assessment of the privileged status by separating the conveying e-mail from the "conveyed" attachment. These attachments are the visualization of the issue upon which Mr. James asked his attorneys to opine. It may be accurate that the subject sets of two attachments originated from third-party sources or depict inanimate objects rather than being a "legal opinion." However, there can be no doubt upon the Court's review of this group of e-mails and attachments, when viewed in terms of the time frame they were communicated, that these e-mails and attachments are an integral part and parcel of the development of this lawsuit, and the legal opinions and advice sought by Mr. James about products he believed infringed on Diversified's products.

Accordingly, these five e-mails and the specified attachments, fall squarely within the ambit of communications between a client and its attorneys which are privileged.

## CONCLUSION

The five e-mails in question, and the attachments to two of them, carry every marker of a confidential communication between attorneys and their client concerning activities within a matter about to be litigated. For all the foregoing reasons, these e-mails and the specified attachments are privileged and not subject to disclosure to or use by Corning.

DATED:   February 24, 2010
         Buffalo, New York

                                   **LIPSITZ GREEN SCIME CAMBRIA LLP**
                                   *Attorneys for Plaintiff*

                                       */s/ Diane M. Roberts*
                              By: _____
                                     DIANE M. ROBERTS, ESQ.
                                     42 Delaware Avenue, Suite 120
                                     Buffalo, New York 14202-3924
                                     (716) 849-1333