UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DIVERSIFIED CONTROL, INC.,

                                  Plaintiff,

                - vs -
                                       Civil Action No.
                                       05-CV-0277 (A)(MC)

CORNING CABLE SYSTEMS, LLC,

                                  Defendant.

### DECLARATION OF SUSAN C. RONEY IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER

SUSAN C. RONEY, an attorney duly licensed to practice law in the State of New York and in the United States District Court, Western District of New York, declares as follows:

1.      I am a member of Nixon Peabody LLP, attorneys for the defendant, Corning Cable Systems, LLC ("CCS"), and as such, am fully familiar with the facts and circumstances set forth below.

2.      I make this Declaration in opposition to the motion for a protective order brought by Plaintiff, Diversified Control, Inc. ("DCI").  DCI's motion sought protection for e-mails *and* e-mail attachments that were identified in a privilege log that DCI produced on August 25, 2009. (*See* Declaration of Diane M. Roberts, filed on February 24, 2010; Docket No. 191-3).

3.      DCI's motion should be denied because it is without merit.

4.      As the Court is aware from the parties' motions (Docket Nos. 191 and 192), as well as from counsel's recent appearances at conferences on February 4 and 10, 2010 (Docket Nos. 187 and 189), and the telephone conference held on March 11, 2010 (Docket No. 195), the dispute at issue concerns the attachments to the five e-mail messages listed on DCI's August 25, 2009 Privilege Log and whether those attachments are protected by the attorney-client privilege.

12938318.1

The five e-mail messages are dated December 28, 2004; January 20, 2005; February 3, 2005; February 8, 2005; and May 13, 2005. (Docket No. 192, Ex. D).

5. The attachments to these five e-mail messages comprise photographs or other pictures (some copied or downloaded from E-Bay) of products made by CCS, DCI, or other competitors. This information is directly responsive to discovery demands that CCS served on DCI in 2005. (See Docket No. 192, ¶ 4, Ex. A).

6. After business hours on February 23, 2009, the night before CCS's motion to compel was to be filed pursuant to the Court's scheduling order (Docket No. 189), and after counsel had already prepared the motion on behalf of CCS, DCI's counsel reported by e-mail message that DCI is no longer challenging disclosure of the attachments to the three e-mail messages dated December 28, 2004; February 3, 2005; and May 13, 2005. The attachments to those three e-mails were then produced by DCI without any designation under the Stipulated Protective Order.

7. However, with respect to the attachments to the other two e-mail messages (January 20, 2005 and February 8, 2005), DCI's counsel maintained that they were privileged. Thus, CCS was forced to amend its motion papers and seek disclosure of the two e-mail attachments that remained at issue – one dated January 20, 2005 attaching pictures of "Channell knock off Locks," and the other dated February 8, 2005, attaching pictures of "Channell locks." (Docket No. 192, Exs. D and F).

8. Neither the February 23, 2010 e-mail communication from DCI's counsel nor DCI's motion for a protective order explain why or how these pictures, which contain solely factual information, are privileged. Nor did DCI's counsel offer any explanations as to why these pictures warranted protection when the others did not.

12938318.1

9. On March 19, 2010, DCI's counsel sent an email message conceding that DCI would produce the remaining at-issue e-mail attachments: "Without in any way waiving our position that these particular attachments are privileged, in an effort to move this matter along by avoiding protracted motion practice and briefing on the issue of these remaining attachments to the privileged emails, we will produce the attachments as attorney eyes only." The Court was copied on this communication. (See Exhibit A).

10. This is a curious position, in that if the attachments are indeed protected by the attorney-client privilege, production of them (under the Stipulated Protective Order or otherwise) would clearly constitute a waiver of privilege protection. Therefore, DCI's claimed reservation of rights notwithstanding, the only conclusion that can be drawn from this is that the attachments are obviously *not* privileged.

11. On March 23, 2010, we received correspondence from DCI's counsel, which enclosed the attachments to the January 20, 2005 and February 8, 2005 e-mails. As suspected, the documents are photographs of a competitor's product, which include pattern locks similar to those made by the parties and which are at issue in this litigation. There is nothing about them that in any way constitutes legal advice.

12. Nevertheless, the documents are all designated as "CONFIDENTIAL-ATTORNEYS EYES ONLY" material.

13. Because the documents have been produced, and because they are not privileged documents, DCI's motion for protection based on the attorney-client privilege should be denied and the attachments should be deemed non-privileged documents.

14. Additionally, the issue regarding the propriety of the "Attorneys Eyes Only" designation is now ripe. Through this Declaration, and because DCI's counsel copied the Court

12938318.1

on her correspondence, CCS hereby challenges this designation under the Stipulated Protective Order (Docket No. 23, ¶ 10).  There is no basis under the Protective Order or New York law for this designation.

15.   CCS reserves all of its rights under the Protective Order and the Federal Rules of Civil Procedure, including its rights to the relief demanded in its motion to compel.

**DCI's Motion as to the E-mail messages Was Unwarranted**

16.   To the extent DCI moved to protect the five e-mail messages themselves, separate and apart from the attachments, its motion should be deemed moot because CCS did not seek production of or challenge the privileged protection of the e-mail messages in the first instance.

17.   As communicated during our conferences with the Court on February 4 and 10, 2010, and as further confirmed by e-mail communication dated February 19, 2010, CCS has only sought production of the attachments to the e-mail messages at issue.  (Docket Nos. 187 and 189; 192, Ex. G).  In response to the February 19, 2010 e-mail communication in which CCS sought confirmation as to whether DCI had changed its position with regard to producing the "attachments" to the e-mail messages, DCI's counsel stated that she had to confirm whether the "attachments" could be recovered (contrary to her prior representations in August 2009 that the specific attachments had in fact been recovered).  I in turn responded by stating "[o]ur motion is due on Wednesday February 24th.  Please let us know before then if you agree to produce the attachments." (Docket No. 192, Ex. G).

18.   Thus, the dispute was very clear – CCS sought production of the attachments, not the e-mail messages themselves.

12938318.1

19.   Nevertheless, DCI filed its motion five days later seeking protection over the e-mail messages, and did not address how the attachments, as separate from the e-mail messages, are in any way privileged.

20.   CCS's motion to compel, filed the same day as DCI's motion, further demonstrates that the dispute concerned the attachments, not the e-mail messages. (Docket No. 192).

21.   It was this discrepancy that lead the Court to call the conference on March 11, 2010.  During that conference, I again stated CCS's position with respect to disclosure of the attachments, not the e-mail messages.[1]

22.   Accordingly, DCI's motion is baseless and unnecessary.  CCS requests that it be awarded its fees and costs for having to respond to DCI's motion, as well as for having to move to compel disclosure of what are clearly non-privileged photographs that should have been produced years ago.

Dated:  Buffalo, New York,
        March 26, 2010

/s/ Susan C. Roney

Susan C. Roney, Esq.
Nixon Peabody LLP
Attorneys for Defendant
40 Fountain Plaza, Suite 500
Buffalo, New York   14202
Tel:  (716) 853-8100
Email:  sroney@nixonpeabody.com

---

[1]  As discussed during the conference call on March 11, 2010, CCS and its counsel will destroy all hard copies of each of the five e-mail messages, but will not return the disks produced by DCI on which they are included.

12938318.1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DIVERSIFIED CONTROL, INC.,

                                    Plaintiff,

- vs -                     Civil Action No.
                                                    05-CV-0277 (A)(MC)

CORNING CABLE SYSTEMS, LLC,

                                   Defendant.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the 26th day of March, 2010 a copy of Susan C. Roney's Declaration in Opposition to Plaintiff's Motion for a Protective Order was served by using the CM/ECF System, which sent notification of such filing to the undersigned:

Joseph Manna, Esq.
LIPSITZ GREEN SCIME CAMBRIA LLP
*Attorneys for Plaintiff*
42 Delaware Avenue, Suite 120
Buffalo, New York   14202
Tel:  (716) 849-1333 (ext. 460)
Fax: (716) 849-1315
Email:  jmanna@lglaw.com

                                          NIXON PEABODY LLP

                                          By:  /s/ Susan C. Roney
                                               Susan C. Roney, Esq.
                                        *Attorneys for Defendant*
                                        40 Fountain Plaza, Suite 500
                                        Buffalo, New York   14202
                                        Tel:  (716) 853-8100
                                        Fax: (716) 853-8109
                                        Email:  sroney@nixonpeabody.com

12938318.1