UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

DIVERSIFIED CONTROL, INC.,                     Case No.:  05-CV-0277 (A) (MC)

                   Plaintiff     **DECLARATION OF DIANE M.**
vs.                                            **ROBERTS IN OPPOSITION TO**
                                               **DEFENDANT'S MOTION TO**
CORNING CABLE SYSTEMS, INC.,                   **COMPEL**

                 Defendant.

───────────────────────────────

     **DIANE M. ROBERTS, ESQ.**, being duly sworn, deposes and says:

     1.     I am an attorney duly licensed to practice in the State of New York and in the United States District Court for the Western District of New York.  I am Special Counsel for the law firm of Lipsitz Green Scime Cambria LLP, attorneys for the Plaintiff, Diversified Control, Inc. ("Diversified"), in the above-referenced action.

     2.     I make this Declaration in opposition to the Motion by Defendant Corning Cable Systems, LLC ("Corning") seeking to compel disclosure of the attachments to two specific email communications listed on an August 25, 2009 Privilege Log of Diversified.

     3.     Initially, Diversified brings to the Court's attention that this issue is moot at this point in time.  In an effort to end this series of motions before the Court, so that the parties may move on to the remaining activities to progress this case toward the trial date now to be set by Judge Arcara on April 16, 2010, Diversified on March 19, 2010 provided by email, to the Court and Corning's counsel (see **Exhibit A**), the transcript of the March 11, 2010 conference with the Court.  Diversified therein advised, as it previously offered to do following that conference, that without waiving its claims as to privilege, it would produce to Corning the attachments in question marked as "Attorneys'

Only" under the terms of the parties' Stipulated Protective Order. (Docket No. 23, filed January 23, 2006). The Stipulated Protective Order provides a process for challenging such designations.

4.      On March 12, 2010, the day after the telephone conference, I did get back to the Court and Corning's counsel as I promised to do. At that time, I indicated Diversified would produce the emails as "Attorneys Only," based on representations I understood from the conference. Corning's counsel refused that resolution offer. A copy of those email communications is at **Exhibit B.**

5.      On March 18, 2010 I had hand-delivered to Corning's counsel, a disk containing the email attachments to approximately over 100 emails previously produced by Diversified, but for which the links to the corresponding attachments were broken.

6.      As my March 19, 2010 email advised, on March 23, 2010, I had hand-delivered to Corning's counsel, the two sets of attachments which are the remaining focus of Corning's Motion to Compel. (See cover letter at **Exhibit C**).

7.      I note that Corning has yet to return, as it said it would, all hard copies of the five (5) emails to which Diversified has asserted privilege, but which were inadvertently produced to Corning.

8.      Corning now has all of the email attachments it sought, which Diversified's forensic expert was able to recover after much effect as addressed below.

9.      Corning's motion also seeks its costs, fees and "other sanctions" for "having to bring this motion." Diversified opposes any such award to Corning for the following reasons.

10.    Diversified has encountered numerous technical difficulties with recovering its emails and attachments.  In 2009, after the problem surfaced with "broken links" between Diversified's emails and their attachments, Diversified, at great expense to it, retained the services of Kroll OnTrack to diagnose the problem and attempt to recover and "re-link" the emails and their respective attachments.

11.    Kroll OnTrack is a "world leader in legal technologies and litigation consulting, including E-Discovery, Computer Forensics and Investigations… ." **Exhibit D** contains information about Kroll OnTrack from its website, and shows its high regard in the technology and legal fields as well as its technical capabilities.

12.    When Kroll OnTrack was retained, our office shipped to it Mr. Brent James' Apple computer so that Kroll OnTrack could examine the computer and determine whether the e-mails and attachments could be recovered and "re-linked."

13.    Our understanding in summer 2009, based on the explanation from the forensic experts at Kroll OnTrack, was that many of the emails and their respective attachments identified as desired by Corning, would be able to be recovered and "re-linked" together and placed on a disk.

14.    I then identified the five (5) emails at issue on these current motions, as dealing with privileged communications relating to various aspects of development of, and commencement of, litigation to protect Diversified's ownership interests in its product line.

15.    Kroll OnTrack was instructed to remove those specific five (5) emails from the disk it was providing to our office to be produced to Corning, and I drafted a

corresponding privilege log that was produced along with the "redacted" disk and Mr. James' Declaration.

16.     As set forth in my Declaration supporting Diversified's contemporaneous motion for a protective order (see Docket No. 191), when the Court held a conference with counsel on February 10, 2010, I learned for the first time that Kroll OnTrack had failed to remove the five (5) emails from the "redacted" disk, and Corning's counsel had those emails in her possession.

17.     By the time of that conference, we had already started working again with Kroll OnTrack to try to obtain the still missing attachments which, to the belief and understanding of Diversified and Kroll OnTrack in late August 2009, were on the disk produced to Corning.

18.     We were now advised (i.e., in early February 2010) by Kroll OnTrack that its engineers could examine its forensic copy of the hard drive from Mr. James' computer to try to identify the problem. Kroll OnTrack's representative, Svetlana Dick, explained to me in mid-February 2010, that her engineers have great difficulty working with the "MAC" email program "Eudora," which was operating on Diversified's Apple computers. From her explanation, it now became apparent to me that "broken links" to attachments are fairly routine when one converts from an Apple Eudora email program to a Microsoft based program like Outlook, which was what was done here in order to produce the emails on a disk that would work on a non-Apple computer. As Ms. Dick explained, Kroll OnTrack discovered that there was breaking of the links between the e-mails and their attachments at the time of conversion from the Eudora mail application to the Microsoft application to put the items onto the disk.

19.    On February 22, 2010 at 12:33 p.m., I received an email from Ms. Dick advising Kroll OnTrack determined it could re-construct the attachments to the majority of the emails.

20.    In speaking that afternoon with Ms. Dick, she explained that the process of recovering the attachments, and matching them up to their respective emails, had to now be done manually, one by one, and would take at least several weeks.  I asked Ms. Dick if Kroll OnTrack could try to first isolate the emails on the privilege log and their attachments, and send those to me as soon as possible.

21.    As I was in the process of addressing these issues with Kroll OnTrack, Ms. Roney began emailing me on Friday, February 19, 2010, inquiring as to whether we had changed our position regarding producing the attachments to the emails on the privilege log.  That email thread is attached to Ms. Roney's Declaration at its Exhibit G, and is attached here again as **Exhibit E** to this Declaration.

22.    In my emails that day, I explained I was in contact with our forensic expert and would let Ms. Roney know about the attachments and our position as soon as I could get an answer.  It is apparent from a read of the subsequent emails that I had understood – apparently mistakenly – that I was to *respond* by February 24, 2010 about the email attachment situation.  I suggested "we may need to clarify that then with the Judge… ."

23.    Ms. Roney, about five and one-half hours later that day, indicated she disagreed.  I continued to press Kroll OnTrack for its determination concerning recovery of the attachments – which included the attachments to the five (5) emails on the privilege log, as I had advised Ms. Roney.

24.     The afternoon of February 23, 2010, I finally received the emails with attachments for the emails listed in Diversified's August 25, 2009 Privilege Log. I assessed the emails and attachments, and in collaboration with colleagues working on this matter, made the decision that Diversified would produce the attachments to three of the emails on the Privilege Log. (See my email to Ms. Roney at Exhibit 2 of my earlier Declaration, dated February 24, 2010, Docket No. 191). That determination was based on the fact that, once we were able to see and compare the attachments with their respective email communications, it was apparent two of the sets of attachments (for December 28, 2004 and February 3, 2005) accompanied emails which, although a communication with counsel, did not seek out, nor were part of an exchange seeking, advice or opinion of counsel. The third set of attachments, upon viewing them, were "E-bay" listings which came off the internet (for the email of May 13, 2005). Diversified did, and still does, assert privilege over all three of the emails themselves, however.

25.     As set forth in my Declaration in support of Diversified's Motion for Protective Order concerning the five (5) emails and the two remaining sets of attachments (Docket No. 191), those two sets of attachments differ from the sets Diversified agreed to produce once we actually had them in hand on February 23, 2010. The difference is that these two sets are part and parcel of the advice/opinion of counsel and interactions and exchanges with counsel, which occur in the emails. These particular attachments could very well have been copied and pasted into the body of the email itself, in that the questions/answers between counsel and client, reference the pictures in the attachments.

26.     This type of attachment differs vastly from some of the other attachments to emails which were produced to Corning's counsel once Kroll OnTrack completed its

forensic recovery. For example, several attachments to certain other of the emails for which the attachments have been the subject of protracted motion practice, with sanctions sought, turned out to be pictures of friends, jokes or maps fully unrelated to this litigation.

27.    Ms. Roney did not contact me at all after I sent the e-mail advising we would produce the three sets of attachments.

28.    On February 24, 2010, Corning filed this Motion to Compel, which by its own contents, clearly was prepared with full knowledge that Diversified was producing three of the sets of attachments. Further, as Ms. Roney admittedly had possession of all five (5) emails for which Diversified has, and still does, assert privilege, the contents of those two emails associated with the two remaining sets of attachments (i.e., the January 20, 2005 and February 8, 2005 e-mails) were fully available to her.

29.    It is very plain from reading those two e-mails that they represent an ongoing e-mail conversation and discussion between attorney and client over the course of a few weeks, about products for which Diversified sought legal advice as it explored litigation to protect its interests in its products. The email communication from counsel clearly incorporates descriptions of the items in the photographs, commenting on specific aspects of those photographs (see item #1 of the February 8, 2005 email attached to Ms. Roney's Declaration at Exhibit F and provided by Diversified *in-camera* at Exhibit 6 to my prior Declaration on Diversified's Motion for a Protective Order, Docket No. 191). Further, it is clear Mr. James attached the additional photographs to his February 8, 2005 email in direct response to the attorney's request for information related to formulating the attorney's opinion and advice.

30.    I take exception to the statements at paragraph 25 of the Roney Declaration. Diversified decided, upon viewing the attachments and in light of this Court's prior ruling, that it would produce three of the sets of attachments. Ms. Roney appears to take exception to the fact that it was my professional opinion that I should *look* at the actual pictures which were attached to the emails, evaluate them against both the body of the email communication and this Court's prior ruling regarding emails and privilege issues, *before* I made a decision concerning changing Diversified's position on the privilege status of the attachments.

31.    That evaluation was made within several hours of receipt of the attachments from Diversified's forensic expert. I had already suggested – with a negative response – that we might seek the Court's assistance concerning the February 24, 2010 date and what needed to be done by that date. Therefore, because of the tight time constraint, Diversified also was forced into bringing a motion, that for a protective order, regarding the privileged status of the five (5) emails themselves. I note that during the March 11, 2010 conference with the Court, Ms. Roney advised that she would return the hard copies of those five (5) emails and was not seeking to uncloak the privileged status asserted by Diversified. (See transcript of the March 11, 2010 conference at **Exhibit A**).

32.    Further, also at paragraph 25 of the Roney Declaration, the statement is made that I did not explain in my February 23, 2010 email why Diversified previously withheld the photographs attached to the three email messages. I believe my e-mail several days earlier, at 10:48 a.m. on February 19, 2010, clearly indicated that I was still waiting to see if the attachments to the small group of privileged emails could even be taken off the Diversified system. At that point in time, neither I nor Diversified knew if

Kroll OnTrack could forensically recover any of the email attachments at all.  It was not a matter of "withholding;" it was a question of being able to recover them at all.

33.    Paragraph 26 of the Roney Declaration references the "forcing" of Corning to incur additional costs and fees to obtain the information.  However, any photographs of Corning's products are just that: Corning's products.  Corning points in this paragraph to its First Request for Documents' demand for information about any analysis or tests by Diversified of other products regarding Diversified's products' proprietary features and characteristics.  Corning appears to be asserting here that these communications <u>with counsel</u> somehow constitute an analysis which Diversified was required to disclose at all.

34.    I am unaware of any requirement that Diversified must disclose privileged communications that constitute the analysis of its counsel, yet that is exactly what is at the crux of assertions in paragraph 26 of the Roney Declaration.

35.    Diversified has acted, in this evolving world of e-discovery, in a responsible manner by attempting to retrieve the responsive emails, with their attachments.  However, even the world's leading forensic expert, Kroll OnTrack, has encountered several roadblocks in recovering and rehabilitating these emails and attachments.  Each time Diversified was notified of a problem with the technological production, it went back and at great expense, had experts try to resolve the problem.

36.    It is respectfully submitted that there is no basis for punishing Diversified for its costly efforts to produce to Corning, information which forensic engineers have themselves had difficulty recovering.  The plain fact is that with super-technological

effort by Kroll OnTrack, Corning – to our understanding – now has everything it sought

through e-discovery, and Diversified has copies as well.

DATED:      March 26, 2010
             Buffalo, New York

**LIPSITZ GREEN SCIME CAMBRIA** LLP
*Attorneys for Plaintiff*

*/s/ Diane M. Roberts*

By: _____
      DIANE M. ROBERTS, ESQ.
      42 Delaware Avenue, Suite 120
      Buffalo, New York 14202
      Tele: (716) 849-1333, Ext. 465
      droberts@lglaw.com

# EXHIBIT A

**Lori Vangelov**

| | |
|---|---|
| From: | Diane M. Roberts |
| Sent: | Friday, March 19, 2010 10:19 AM |
| To: | 'Roney, Susan'; 'Matthew_Yusick@nywd.uscourts.gov' |
| Subject: | Diversified v Corning |
| Attachments: | LG_DOCS-#1153031-v1-transcript_of_hearing_3-11-10.PDF |

Susan and Matt-

I obtained a copy of the transcript from the March 11th telephone conference on the pending motions, and attach it here so that everyone has it available for reference should they want to review it. Without in any way waiving our position that these particular attachments are privileged, in an effort to move this matter along by avoiding protracted motion practice and briefing on the issue of these remaining attachments to the privileged emails, we will produce the attachments as attorney eyes only. We should have them to your office on Tuesday (I am out Monday).

Diane

Diane M. Roberts, Esq.
Lipsitz Green Scime Cambria LLP
42 Delaware Avenue, Suite 120
Buffalo, New York14202
Phone: (716) 849-1333 Ext. 465
Fax:    (716) 849-1315
*************************************************************************************************
U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.
*************************************************************************************************
NOTICE: This message contains privileged and confidential information intended only for the use of the person named above. If you are not the intended recipient, you are hereby notified that any distribution or copying of this message is prohibited. If you have received this message in error, please call (716) 849-1333 ext. 465and destroy the original message. Thank you.

03/19/2010

1

1                          UNITED STATES DISTRICT COURT

2                          WESTERN DISTRICT OF NEW YORK

3

4

5       - - - - - - - - - - - - - X
        DIVERSIFIED CONTROL, INC.   )    05CV277
6                    Plaintiff      )
        vs.
7                                        Buffalo, New York
        CORNING CABLE SYSTEMS, LLC       March 11, 2010
8                    Defendant.     )    4:00 p.m.
        - - - - - - - - - - - - - X
9       **MOTION**
        **Transcribed from Electronic Recording Device**
10
                               TRANSCRIPT OF PROCEEDINGS
11              BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
                       UNITED STATES MAGISTRATE JUDGE
12

13

14                      DIANE MARIE ROBERTS, ESQ.
                        Lipsitz, Green Scime, Cambria, LLP
15                      42 Delaware Avenue, Suite 120
                        Buffalo, New York 14202
16

17

                        SUSAN C. RONEY, ESQ.
18                      Nixon Peabody, LLP
                        40 Fountain Plaza, Suite 500
19                      Buffalo, New York 14202

20

21

22

23

24      COURT REPORTER:    Karen J. Bush, Official Court Reporter
                           (585) 613-4312
25                         100 State Street
                           Rochester, New York 14614

1                     P R O C E E D I N G S

2                         *        *        *

3

4

5

6

7              THE CLERK:  On the record, this is Diversified

8    Control versus Corning Cable Systems, case No. 05CV277.  For

9    Plaintiff, Diane Marie Roberts; for defendant, Susan C, Roney

10   and Sheldon Keith Smith.  We're here for a telephonic status

11   conference before Judge McCarthy.

12              THE COURT:  Good afternoon everyone.

13              MS. ROBERTS:  Good afternoon.

14              MS. RONEY:  Good afternoon.

15              MAGISTRATE JUDGE MCCARTHY:  Everyone can hear me?

16              MS. RONEY:  Yes.

17              MS. ROBERTS:  Yes.

18              THE COURT:  I got Diane's motion for protective

19   order and Susan's motion to compel.  And we haven't set a

20   briefing schedule on either, but I thought we would just see if

21   maybe we could cut to the chase here because I'm a little

22   confused, and perhaps somebody can help me out of the woods

23   here.  Diane's motion seeks a protective order as to certain

24   e-mails and attachments.  And Susan's motion to compel seems to

25   only request the production of attachments to two specific

1    e-mails and not the e-mails themselves; is that correct?

2              MS. RONEY:  That's right.  There were five e-mails

3    that were at issue and prior to our making the motion, DCI

4    produced the attachment to three of the e-mails and so that

5    left, for purposes of my motion, the attachments to two of

6    them, but we are only seeking the exception.

7              THE COURT:  All right.  So there is no need for me

8    to decide the protective order on the e-mails.

9              MS. ROBERTS:  Well.

10             MAGISTRATE JUDGE MCCARTHY:  Diane, let me say --

11   I'm sorry, I'll stop and you talk.  What were you going to say?

12             MS. ROBERTS:  I was going to say that, you know, I

13   don't agree with that because I am looking to have all five of

14   those e-mails in protective status as privileged.

15             MAGISTRATE JUDGE MCCARTHY:  But if they're not

16   seeking production of the e-mails, then why is that an issue?

17             MS. ROBERTS:  I'm concerned at page 4 of Ms.

18   Roney's affidavit and declaration it states in the footnote

19   that the e-mail messages are treated as "attorney's only"

20   material pending resolution of the outstanding discovery

21   matters concerning the e-mail communication.  It is not saying

22   that at no point in time are they going to seek to have those

23   e-mails not be considered privileged, number one.  Number two,

24   I feel I need to protect my client to make sure those are

25   really privileged communications, and once again, believe me,

```
 1    if I could explain how this continues to happen when I'm using
 2    one of the leading forensic experts in the country, but once
 3    again, even though they were supposed to redacted, they told me
 4    we redacted, low and behold I found out when we were over there
 5    in court in February that the five e-mails on my privilege log
 6    were still in the batch on the disk that was produced.  I've
 7    got to make sure that these five e-mails are protected and,
 8    frankly, I can envision that without the substance of the
 9    e-mails, the attachments really are of no use.  So I can
10    foresee at some point in time there is going to be some type of
11    action attempted to try to uncloak those e-mails as privileged.
12                   MAGISTRATE JUDGE MCCARTHY:  Look, you have a lot
13    of cases to deal with, Susan has a lot of cases to deal with,
14    believe it or not, I have a lot of cases to deal with, and it
15    seems to me that we should be addressing only those issues that
16    are ripe at a particular time.  Now, if Susan, at this point,
17    is seeking only the photos, even if you think the photos are
18    useless absent the e-mails, then it seems to me that is what I
19    should focus on.  On the other hand, if you're saying that
20    Susan is intending to use the e-mails in some respect or not
21    return them, then I suppose I do have to address that issue, so
22    let me ask Susan first.  Susan, what is your intention with
23    respect to the e-mails?
24                   MS. RONEY:  I didn't have any intention to use
25    them.  I mean, we're not seeking to have them.  I suppose the
```

1    only thing I could envision down the road would be, you know,

2    if Mr. James and I decide that he have the attachments.

3              THE COURT:  Let's take one step at a time.  Can

4    you agree, irrespective of whether the e-mails are privileged

5    or not, it seems to me I don't have to decide that issue if you

6    agree to return the e-mails and aren't seeking to hold them,

7    then it's an abstract question.  I only need to decide it if

8    you're claiming entitlement to them.  I mean, Diane, would you

9    agree with that?

10             MS. ROBERTS:  Well, that is one portion of it.  I

11   mean, I suppose -- I'm concerned, frankly, that if I agree to

12   something that it's going to end up at some point being viewed

13   as a win by Corning and it's going to come up again in a

14   sanctions motion or --

15             THE COURT:  Oh, come on now, come on, come on.

16             MS. ROBERTS:  I have to make sure of that.  It's

17   happened it the past.  I want to make sure if I agree to

18   something, that it's not going to be used as --

19             MAGISTRATE JUDGE MCCARTHY:  It seems to me and it

20   seems to me -- and the one reason I called this conference

21   rather than just setting a briefing schedule, it seemed to me

22   that you were like two ships passing in the night.  That one

23   side was seeking something much more limited than the other

24   side was seeking to protect.  And if we can agree on that and

25   agree that no reference will be made to any victory or anything

1    of that sort, then I can just focus on what seems to be the

2    only thing in dispute right now, which is are you entitled to

3    -- or are you obligated to turn over the photos or not.  So, I

4    mean, we can go the whole distance here on full briefing if you

5    want, but it just seems to me at this point that is the primary

6    issue which is, is Corning entitled to obtain the photos

7    attached to the January 20th e-mail and the February 8th

8    e-mail.

9             MS. ROBERTS:  That that would be the only

10   (inaudible).

11            THE COURT:  Well, I mean, Susan, do you agree that

12   at this point you're not seeking the e-mails themselves and if

13   somebody wants to make an issue of them down the road, then

14   I'll decide -- I'll decide it if and when it becomes an issue.

15   But it just seems to me as of right now it's not an issue.

16            MS. RONEY:  I agree with that completely.

17            THE COURT:  And do you have the e-mails in your

18   possession?

19            MS. RONEY:  Yeah.

20            MAGISTRATE JUDGE MCCARTHY:  Okay.  Would you agree

21   to return the e-mails to Diane so that there is no issue as to

22   that?

23            MS. RONEY:  Yeah.

24            MAGISTRATE JUDGE MCCARTHY:  Okay.  Diane, is that

25   satisfactory to you?

1          MS. ROBERTS:  Yes.

2          MAGISTRATE JUDGE MCCARTHY:  On that aspect.  Okay.

3    Then we can focus on the photos themselves.  Let me ask you,

4    Diane, you did send me a letter February 24th with attachments

5    and you copied Susan on the letter, but not on the attachments

6    and I understand.

7          MS. ROBERTS:  Correct.

8          MAGISTRATE JUDGE MCCARTHY:  And I understand why

9    you didn't include the attachments.  But, I'm just a little

10   confused because paragraph 24 of Susan's declaration, which is

11   docket No. 192, and that was filed under seal, but what I'm

12   going to talk about here isn't privileged.  Paragraph 24

13   identifies two specific e-mails by date.  The first being

14   January 20th, 2005, and the second being February 8th, 2005, do

15   you see that?

16         MS. ROBERTS:  Correct, yes.

17         THE COURT:  Now, the letter that you sent me, your

18   February 24th letter, exhibit 4, I take it, is the January 20th

19   e-mail, correct?

20         MS. ROBERTS:  Correct, and I just in getting ready

21   for this realized there was a typo.

22         MS. RONEY:  Correct.  Because it's exhibit 6, I

23   believe, your letter says it's a January 20th e-mail, but in

24   fact, it's an -- it's the February 8th e-mail, correct?

25         MS. ROBERTS:  Right, right, and that is what

1    matches within the body of my declaration.

2            MAGISTRATE JUDGE MCCARTHY:  Right, okay, so we're

3    all good there then.  Now, if it's only the photos that Corning

4    is seeking and I've looked at the photos and, frankly, other

5    than the fact that they show certain devices or products, I

6    don't understand really what they show or what the significance

7    or lack thereof to the case, but how are the photos privileged.

8            MS. ROBERTS:  The photos, and as I tried to

9    explain in my declaration, the photos are part and parcel of

10   those e-mails, which goes back to why we sought to have the

11   protective order in place.  The e-mails from those two

12   particular dates look for legal opinion about what is depicted

13   in those photos.  And specifically in the e-mails, there is

14   reference to basically, very simply, you know, this picture

15   shows this or this shows this.

16           MAGISTRATE JUDGE MCCARTHY:  I know, but if you

17   assume that I'm not ordering the e-mails to be produced, what

18   is -- so, when you say is part and parcel of the e-mails, I'm

19   not ordering the e-mails to be produced.  And as you said

20   earlier, the photos may be meaningless absent the e-mails, but

21   that is all Corning is asking for right now.  And I have great

22   difficulty in seeing -- and, you know, I'll keep an open mind

23   here, but I don't understand how the photos themselves are

24   privileged.

25           MS. ROBERTS:  Those photos were basically sent by

```
 1    our client to his attorney and part of the whole -- and you got
 2    to look at the context of when this lawsuit was commenced.
 3    This lawsuit was being prepared during this period of time when
 4    he is sending those pictures.  And when I say it's part and
 5    parcel, it's part of that entire process of developing the suit
 6    and putting the claims into suit, deciding what claims there
 7    are and what is out there that should go into the litigation.
 8    And this is information that he is providing as possible
 9    reasons and bases for commencing this lawsuit.  And, you know,
10    my concern is by allowing pictures that he sent as part of the
11    development of the lawsuit, I'm envisioning at some point this
12    is going to be stuck under my client's nose at the time of
13    trial and asked why did you send these pictures to your
14    attorney.
15                    MAGISTRATE JUDGE MCCARTHY:  And I would think at
16    that point maybe an objection would be appropriate as to why
17    you sent the picture.  But I, for the life of me, at this point
18    I'm having great difficulty in seeing why the picture itself is
19    privileged in any way.  That to me is like saying a client
20    sends his lawyer or her lawyer a report prepared by somebody
21    else, for example, and says will you analyze this report for me
22    and give me your advice as to its significance or maybe a
23    contract.  Please, Mr. Jones, analyze this contract for me and
24    give me your advice as to whether or not the contract is
25    enforceable.  Well, certainly the request for advice and even
```

 1      more so the advice that the lawyer would give as to the

 2      enforceability of a contract, I can easily see that being

 3      privileged.  But the contract itself, which was transmitted, I

 4      don't see how that is privileged merely by virtue of the fact

 5      that it was included with a transmission that itself might

 6      otherwise be privileged.  Diane, I'll keep an open mind on this

 7      and I'll set a briefing schedule on this aspect if you want,

 8      but I want to caution you that I think you got a steep hill to

 9      climb here.  If you can convince me, I'll look at it, but bear

10      in mind that, you know, I did -- you all know what my ruling

11      was on the last sanctions motion.  It's been objected to.  What

12      will happen with it, I don't know.  But, Corning is asking

13      again for attorney's fees for having to bring this motion.  And

14      I need to determine, among other things, whether your position

15      in refusing to produce these photos is substantially justified.

16      And I'm just telling you right now, I don't see a substantial

17      justification for it, but I will keep an open mind on it.  So,

18      you folks tell me what you want to do.  You want to -- you want

19      me to set a briefing schedule here?

20                  MS. ROBERTS:  I'd like to have until tomorrow to

21      talk to my client if I could.

22                  MAGISTRATE JUDGE MCCARTHY:  All right.  Susan?

23                  MS. RONEY:  That's fine.  I guess we'll wait for

24      Diane.

25                  THE COURT:  All right.  Why doesn't somebody get

11

1    back to me tomorrow and tell me what you want to do, and if the

2    issue isn't resolved, then we'll set a briefing schedule and

3    we'll see where we go, okay?

4            MS. ROBERTS:  Do you want me to let you know by

5    e-mail or phone call?

6            MAGISTRATE JUDGE MCCARTHY:  Either way.  I'll tell

7    you what, why don't you just e-mail me and e-mail Susan either

8    way and if your decision is, you know, you want me to decide

9    the issue, then we'll set a briefing schedule for further

10   submissions on the motions and we'll take it from there, okay?

11           MS. ROBERTS:  Okay.

12           MAGISTRATE JUDGE MCCARTHY:  Okay.  Anything else

13   today, folks?

14           MS. RONEY:  I don't think so.

15           MS. ROBERT:  No.

16           MAGISTRATE JUDGE MCCARTHY:  Okay, thank you.

17           MS. RONEY:  No thank you.

18           MS. ROBERT:  Bye bye.

19

20

21

22

23

24

25

12

```
 1                    CERTIFICATE OF TRANSCRIBER

 2

 3        I certify that the foregoing is a correct transcript from

 4   the official electronic sound recording of the proceedings in

 5   the above-entitled matter.

 6

 7   /s Karen J. Bush, RPR

 8   Official Court Reporter

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT B

## Diane M. Roberts

| | |
|---|---|
| **From:** | Jeremiah_McCarthy@nywd.uscourts.gov |
| **Sent:** | Friday, March 12, 2010 4:20 PM |
| **To:** | Diane M. Roberts |
| **Cc:** | Joseph J. Manna; Matthew_Yusick@nywd.uscourts.gov; Smith, Sheldon; Roney, Susan |
| **Subject:** | RE: Diversified v Corning  05-CV-0277 |

You can request a transcript, or listen to the audio (we can set this up by conference call) - but let's either resolve this or I'll decide it. I'll set a briefing schedule by separate Text Order.

Hon. Jeremiah J. McCarthy
United States Magistrate Judge
United States District Court, Western District of New York
68 Court Street, Room 424
Buffalo, New York 14202
(716) 362-9350 (Main); (716) 362-9355 (fax)
E-Mail: jeremiah_mccarthy@nywd.uscourts.gov

    From:        "Diane M. Roberts" <droberts@lglaw.com>

    To:          <Jeremiah_McCarthy@nywd.uscourts.gov>, "Roney, Susan"
<SRoney@nixonpeabody.com>

    Cc:          "Joseph J. Manna" <JManna@lglaw.com>, "Smith, Sheldon"
<sksmith@nixonpeabody.com>,
                 <Matthew_Yusick@nywd.uscourts.gov>

    Date:        03/12/2010 04:04 PM

    Subject:     RE: Diversified v Corning  05-CV-0277

Since the Court recorded yesterday's conference, before we do either a further conference or a briefing schedule, I would like to review the transcript of it. My response was based on what I understood we discussed, agreed upon and my notes of same. So I think it would be fruitful to review the entire session as recorded so that we can all benefit from that, and move forward accordingly.

-----Original Message-----
From: Jeremiah_McCarthy@nywd.uscourts.gov
[mailto:Jeremiah_McCarthy@nywd.uscourts.gov]
Sent: Friday, March 12, 2010 3:55 PM
To: Roney, Susan
Cc: Diane M. Roberts; Joseph J. Manna; Smith, Sheldon; Matthew_Yusick@nywd.uscourts.gov
Subject: RE: Diversified v Corning 05-CV-0277

Is another conference desirable, or should I set a briefing schedule on the motions?

Hon. Jeremiah J. McCarthy
United States Magistrate Judge
United States District Court, Western District of New York
68 Court Street, Room 424
Buffalo, New York 14202
(716) 362-9350 (Main); (716) 362-9355 (fax)
E-Mail: jeremiah_mccarthy@nywd.uscourts.gov


    From:        "Roney, Susan" <SRoney@nixonpeabody.com>


    To:          <Jeremiah_McCarthy@nywd.uscourts.gov>


    Cc:          "Diane M. Roberts" <droberts@lglaw.com>, "Joseph J. Manna"
<JManna@lglaw.com>, "Smith,
             Sheldon" <sksmith@nixonpeabody.com>


    Date:        03/12/2010 03:25 PM


    Subject:     RE: Diversified v Corning  05-CV-0277




First, we do not agree that the attachments to the e-mails constitute "attorneys only
material" and do not waive CCS's right to contest any such designation by DCI.  Second, I
do not wish to belabor this but the fact remains that the attachments that are now being
produced should have been produced (or at least divulged through a privilege log) years
ago in response to discovery demands. Clearly, these responsive and relevant documents
would not have been produced but for CCS's motion to compel. Thus, I cannot agree that CCS
will be precluded in the future from raising this issue as it may deem appropriate.
Finally, although we can return our hard copies of the e-mails at issue, I do not know how
we can remove them from the discs that have been produced by DCI, and we do not agree to
return the discs.  Thank you.  Susan

Susan C. Roney
Partner

Nixon Peabody LLP
Key Towers at Fountain Plaza
40 Fountain Plaza Suite 500
Buffalo, NY 14202
P (716) 853-8101
F (866) 283-1398
sroney@nixonpeabody.com
www.nixonpeabody.com

Please note that this Mailbox does not accept service of pleadings, except as may be
specifically required by a court order or binding rule of the court.

The preceding e-mail message contains information that is confidential and may be

                                      2

protected by the attorney/client or other applicable privileges. The information is
intended to be conveyed only to the designated recipient(s) of the message. If you believe
that you are not an intended recipient of this message, please notify the sender at (716)
853-8101. Unauthorized use, dissemination, distribution or reproduction of this message by
other than the intended recipient is strictly prohibited and may be unlawful.

-----Original Message-----
From: Jeremiah_McCarthy@nywd.uscourts.gov
[mailto:Jeremiah_McCarthy@nywd.uscourts.gov]
Sent: Friday, March 12, 2010 2:53 PM
To: Roney, Susan
Cc: Diane M. Roberts; Joseph J. Manna
Subject: RE: Diversified v Corning 05-CV-0277

OK.

Hon. Jeremiah J. McCarthy
United States Magistrate Judge
United States District Court, Western District of New York
68 Court Street, Room 424
Buffalo, New York 14202
(716) 362-9350 (Main); (716) 362-9355 (fax)
E-Mail: jeremiah_mccarthy@nywd.uscourts.gov

    From:      "Roney, Susan" <SRoney@nixonpeabody.com>


    To:        <Jeremiah_McCarthy@nywd.uscourts.gov>, "Diane M. Roberts"
<droberts@lglaw.com>

    Cc:        "Joseph J. Manna" <JManna@lglaw.com>


    Date:      03/12/2010 02:51 PM


    Subject:   RE: Diversified v Corning  05-CV-0277

I would like an opportunity to respond to Ms. Roberts' communication.  I will have it to
you shortly.  Thank you.  Susan

-----Original Message-----
From: Jeremiah_McCarthy@nywd.uscourts.gov
[mailto:Jeremiah_McCarthy@nywd.uscourts.gov]
Sent: Friday, March 12, 2010 2:50 PM
To: Diane M. Roberts
Cc: Joseph J. Manna; Roney, Susan

Subject: Re: Diversified v Corning 05-CV-0277

Thank you. Can I deem both motions resolved?




Hon. Jeremiah J. McCarthy
United States Magistrate Judge
United States District Court, Western District of New York
68 Court Street, Room 424
Buffalo, New York 14202
(716) 362-9350 (Main); (716) 362-9355 (fax)
E-Mail: jeremiah_mccarthy@nywd.uscourts.gov



    From:       "Diane M. Roberts" <droberts@lglaw.com>


    To:         <Jeremiah_McCarthy@nywd.uscourts.gov>, "Roney, Susan"
<SRoney@nixonpeabody.com>

    Cc:         "Joseph J. Manna" <JManna@lglaw.com>


    Date:       03/12/2010 02:45 PM


    Subject:    Diversified v Corning  05-CV-0277




Judge McCarthy-

In light of the developments during the telephone conference yesterday on the pending
motions, and specifically in reliance on Ms. Roney's agreement on behalf of Corning that
she  is not seeking to use the five privileged emails to which the attachments were
attached (i.e. the subject of our motion for a protective order), that she will return the
five emails to us, and that our agreement to now produce the attachments to the two
privileged emails dated  1/20/05  and 2/8/05 will not be construed or acted upon as a
"victory" for Corning so as to be part of a motion for sanctions and/or costs, Diversified
will produce those additional attachments for "attorneys eyes only".

We ask that Corning's motion remain sealed in the Court's record as it contains the emails
to which Diversified has and still asserts privilege.

Thank you.

Diane

Diane M. Roberts, Esq.
Lipsitz Green Scime Cambria LLP
42 Delaware Avenue, Suite 120
Buffalo, New York14202

4

Phone:   (716) 849-1333 Ext. 465
Fax:        (716) 849-1315
**********************************************************************
*****************************************

U.S. Treasury Circular 230 Notice:  Any U.S. federal tax advice included in this
communication was not intended or written to be used, and cannot be used, for the purpose
of avoiding U.S. federal tax penalties.
**********************************************************************
*****************************************

NOTICE:  This message contains privileged and confidential information intended only for
the use of the person named above.  If you are not the intended recipient, you are hereby
notified that any distribution or copying of this message is prohibited. If you have
received this message in error, please call (716) 849-1333 ext. 465and destroy the
original message.
Thank you.

# EXHIBIT C

Lipsitz Green Scime Cambria LLP

Attorneys at Law          42 Delaware Avenue, Suite 120, Buffalo, New York 14202-3924  P 716 849 1333  F 716 855 1580 (Not for Service)  www.lglaw.com

Paul J. Cambria, Jr ¹³
James T. Scime
Herbert L. Greenman
Patrick C. O'Reilly
Michael Schiavone
Laraine Kelley
William M. Feigenbaum
Joseph J. Gumkowski
Richard P. Weisbeck, Jr
Mark L. Stulmaker
Barry Nelson Covert
Christopher S. Mattingly
Robert L. Boreanaz
Thomas M. Mercure
John A. Collins
George E. Riedel, Jr ²
Michael P. Stuermer ³
Jeffrey F. Reina
Cherie L. Peterson
Sharon M. Heim
Paul J. Cieslik
Michael R. Weremblewski
Gregory P. Krull
Michele A. Braun
Michael S. Deal ⁴
Joseph J. Manna
William P. Moore
Jonathan W. Brown ³
Philip Scaffidi
Robert E. Ziske
Thomas C. Burnham
David C. Zimmerman ⁵
Teresa A. Bailey
John M. Lichtenthal
Daniel M. Killelea
Patrick J. Mackey ³
James M. VanDette
Matthew B. Morey
Brittany L. Penberthy ⁶
Melissa A. Cavagnaro
Andrew O. Miller
Emily R. Fusco

OF COUNSEL
Richard Lipsitz
Carl A. Green
Eugene W. Salisbury ³

SPECIAL COUNSEL
James W. Kirkpatrick
Roger W. Wilcox, Jr ³
Denis A. Scinta
David G. Henry
Richard D. Furlong
Scott M. Schwartz
John P. Hains ²
Diane M. Roberts
Christopher J. Smolka ¹³

LICENSED WORKERS'
COMPENSATION
REPRESENTATIVE
Keith T. Williams
Patricia N. Lyman

Seymour L. Schuller
1951-1988

Evan E. James
1955-1989

¹ Also admitted in District of Columbia
² Also admitted in Florida
³ Also admitted in California
⁴ Also admitted in Ohio
⁵ Also admitted in Illinois
⁶ Also admitted in New Jersey
⁷ Also admitted in Pennsylvania
⁸ Also admitted in Connecticut

March 23, 2010

**HAND-DELIVERED**

Susan C. Roney, Esq.
Nixon Peabody, LLP
40 Fountain Plaza, Suite 500
Buffalo, New York  14202

RE:     **Diversified Control, Inc. v. Corning Cable Systems, Inc.**
         Case No.:  05-CV-0277A (MC)

Dear Ms. Roney:

In follow up to my email to you on March 19, 2010, enclosed are the attachments to the emails dated January 20, 2005 marked with bates numbers DIVCON004757-DIV004764 and February 8, 2005 marked with bates numbers DIVCON004765-DIVCON004772.

Very truly yours,

**LIPSITZ GREEN SCIME CAMBRIA LLP**

By:     Diane M. Roberts

DMR:jh
Enclosures

Cc:     Joseph J. Manna, Esq. *(w/o enclosures)*

Writer's Extension:  465
Writer's Direct Fax:  849-1315
E-Mail: jmanna@lglaw.com

# EXHIBIT D



# KROLL ONTRACK

| About Us | Resources | Events | News Center | Careers | Contact Us | Client Login | | You are here |
|---|---|---|---|---|---|---|---|---|

**Powering Control Ability.**

Afford. Scale. Predict. Flex.

Legal Technologies
Data Recovery
Software

The world leader in legal technologies and litigation consulting, including:

E-Discovery
Computer Forensics
& Investigations
ESI Consulting
Secure Information Services
Jury Consulting
Trial Presentations

**Kroll Ontrack Webinar:
Cost-Efficient Document
Review Made Easier**

March 24 | 1:00 p.m. EST
Learn important strategies
to implement in every
document review project

Register

Today

Industry leading provider of fast, secure and cost effective solutions for:

Data Recovery
E-mail Recovery / Management
Data / Media Conversion & Migration
Erasure Solutions
Media Disposal

# News & Events

Tuesday, March 16, 2010
Kroll Ontrack Survey Reveals Litigation Hold And
Automated Document Retention Functionality Are
Key Drivers In Information Management
Decisions

Tuesday, March 9, 2010
Kroll Ontrack Reveals Latest Trends In Data
Recovery

Trusted software tools, relied on by millions of users, including:

E-mail & File Archiving
Data Recovery
E-mail Recovery / Management
Online Document Review
Case Management
Search Technologies
Data Erasure

## Get Help Now >

**Project Assistance & Support**

KROLL ONTRACK

Privacy Policy | Legal Notices | Site Map
Copyright© 2010 Kroll Ontrack Inc. All Rights Reserved.

# KROLL ONTRACK®

About Us    Resources    Events    **News Center**    Careers    Contact Us    Client Login                    You are here

News Center > Awards

# Awards

Kroll Ontrack strives to deliver superior products and services to the markets and individuals it serves. The company and its leadership have been recognized for the following awards:

## Corporate Recognition

**Minneapolis/St. Paul Business Journal**
*Women in Business Industry Leader Award, Kristin Nimsger*
2008

**Minnesota Tekne**
*Winner of the Companies Who Have Shown Technology Innovation Category*
2002

## Legal Technologies Recognition

**Law Technology News**
*Risk Management Service/Consultant, Gold Award*
Kroll Ontrack Secure Information Services
2009

**Law Technology News**
*EDD Services Identification, Gold Award*
Kroll Ontrack ESI Consulting Group
2009

**Law Technology News**
*EDD Services Preservation, Silver Award*
Kroll Ontrack Data Collection Services
2009

**Law Technology News**
*EDD Services Collection, Silver Award*
Kroll Ontrack Data Collection Services
2009

**Law Technology News**
*Collaboration Tools, Bronze Award*
Ontrack® Shareview™
2009

**Law Technology News**
*EDD Services Analysis, Bronze Award*
Ontrack® Advanceview™
2009

**Law Technology News**
*EDD Services Review, Bronze Award*
Kroll Ontrack Document Review Services
2009

**Law Technology News**
*Litigation Support Consultant, Bronze Award*
Kroll Ontrack ESI Consulting Group
2009

**Connecticut Law Tribune**
*"Best Of" Survey in the Area of E-Discovery*
2008

**Socha-Gelbmann Electronic Discovery Survey Report**
*Top 5 2007 Electronic Discovery Service Providers*
2008

Am Law Tech

KROLL ONTRACK

Privacy Policy | Legal Notices | Site Map
Copyright© 2010 Kroll Ontrack Inc. All Rights Reserved

## KROLL ONTRACK®

Data Recovery

# Data Recovery



## Recover, Restore, Erase & Manage Your Data More Efficiently

From initial data production, to storage, and to destruction, each stage of the data lifecycle presents unique challenges for those who create, access, organize and manage electronic data. Some of these challenges - such as how you are going to store the data and what you will do when you no longer need it - can be planned for well in advance. Other challenges - such as data loss or other disasters - cannot be anticipated.

Kroll Ontrack (then called Ontrack Data International) began providing data recovery services in 1987. Since then, the company has expanded its offering to include many more products and services that, basically, help clients do more with their data. Kroll Ontrack has also expanded its number of data recovery locations - from a single lab in Eden Prairie, Minnesota in 1987 to more than 30 locations worldwide today.

The data solutions offered by Kroll Ontrack to businesses, government and healthcare entities, and consumers worldwide have grown to support clients at even more steps of the data lifecycle.

## What Can We Do for You (and Your Data)?

### Recover

Ontrack® Data Recovery experts have the ability to recover data from virtually any data storage device; or do-it-yourself with Ontrack® EasyRecovery™ software. More Information >

### Restore

Ontrack® PowerControls™ software makes locating, restoring and managing your Microsoft® Exchange email a much easier process. It's the ultimate "power tool" for Exchange administrators. More Information >

### Erase

Ontrack® Eraser solutions provide three secure methods for permanently deleting sensitive data from hard drives and other storage devices. Choose from software, services or hardware to meet your unique erasure needs. More Information >

### Manage

Data archives management services can save I.T. departments time with data migration, conversion, cataloging and duplication projects that are necessary when updating or changing I.T. infrastructure, meeting compliance requirements or identifying contents of tapes or other data storage devices. More Information >

---

KROLL ONTRACK®

Privacy Policy | Legal Notices | Site Map
Copyright© 2010 Kroll Ontrack Inc. All Rights Reserved.

# KROLL ONTRACK®

Data Recovery > E-mail Recovery / Management

# E-mail Recovery / Management



## Find and Restore Exchange E-mail Archives in Minutes!

Whether you need to recover lost, deleted or inaccessible e-mail messages; restore Microsoft® Exchange Server archives to your production environment or search for e-mail that meets specific criteria - Kroll Ontrack has solutions with Ontrack® Data Recovery services and Ontrack® PowerControls™ software.

## Which Solution is Right for You?

**Use Ontrack Data Recovery Service when...**

You have an immediate need to recover lost or inaccessible e-mail files.
You may have mechanical damage to your e-mail server, hard drives or other storage media.
You have a data recovery emergency that requires on-site, cleanroom or remote service.

**Use Ontrack PowerControls Software when...**

You need to restore Microsoft® Exchange Server data without building an Exchange Recovery Server.
You need to locate e-mail messages, attachments or other Microsoft® Outlook® items that meet specific criteria.
You want to eliminate the need for time-consuming, expensive single-mailbox "brick-level" backups.

## We Can Help!

For immediate, 24/7 data recovery assistance, contact Ontrack Data Recovery at **888 567 8328** - or **submit an online help request**.

For information about Ontrack PowerControls software, contact our software specialists at **800 645 3649** - or **submit an online help request**.

KROLL ONTRACK®

Privacy Policy | Legal Notices | Site Map
Copyright© 2010 Kroll Ontrack Inc. All Rights Reserved.

# KROLL ONTRACK®

News Center > Expert Bios

# Expert Bios

## Meet Our Team

Employing several hundred attorneys, legal consultants and engineers, Kroll Ontrack has in-depth, unparalleled expertise in electronic discovery, paper discovery, computer forensics, trial consulting, presentation techniques and data recovery relevant to law firms, financial institutions, corporations, government agencies and individuals.

As former practitioners, many of Kroll Ontrack's legal experts have first-hand, front-line experience with large-scale document collection, storage, management and production in a spectrum of legal areas. Add twenty years of data recovery experience, 200 engineers and the most extensive set of proprietary data recovery tools and we have a plethora of subject matter experts in the following areas:

| | | |
|---|---|---|
| Antitrust | Data Erasure | Environmental Law |
| Bankruptcy Law | Disaster Recovery | Intellectual Property |
| Compliance | Encryption | Information Lifecycle Management (ILM) |
| Computer Fraud | E-mail Management & Recovery | Mergers & Acquisitions |
| Data Loss & Recovery | Employment Law | |

## Legal Technology Experts

By keeping their fingers on the pulse of the latest case law developments and trends from the worlds of law and legal technology, Kroll Ontrack's attorneys and legal consultants bring an unmatched knowledge base to help their clients so that practicing attorneys and legal support staff can take advantage of faster, easier and more cost-effective document discovery and management solutions.



**Stephen D. Baird, M.S. CISSP, CISA, CISM, CBCP, CPP**
*Managing Director, Information Security, Computer Forensics & ESI Consulting*
New York office

Stephen Baird delivers integrated functions to organizations encompassing information security, e-discovery, cyber investigations, computer forensics, business continuity, disaster recovery, incident response, IT audit, records management, and privacy. Previously the vice president and chief information security and privacy officer for a large public company, Baird has over 20 years of industry and law enforcement expertise in complex technology and risk mitigation leadership. His vast experience has brought great success with enterprise-wide strategic development and implementation of information risk mitigation and technology initiatives. He has designed and implemented indigenous security architectures across multiple technology platforms on some of the most sophisticated networks and systems in the world. Baird has additionally worked with Fortune 100 corporations on issues related to risk management, compliance, and regulatory matters.

Prior to his involvement in the commercial market, Baird worked in local, state and federal law enforcement, most recently as a Supervisory Special Agent and Division Chief of Computer Crimes for the Department of Defense. He received his M.S. in Information Architecture from Capital College in Laurel, Md., and his B.S. in Economics and Finance from the University of Hartford in West Hartford, Conn. He served as an Adjunct Professor at the University of New Haven in New Haven, Conn. in support of their Criminal Justice program in the areas of computer crimes and modern legal issues.



**Alan E. Brill, CISSP, CFE, CIFI**
*Senior Managing Director, Computer Forensics*
New Jersey office

With more than 25 years in the information security field, Alan Brill is recognized internationally as a leader in his field. Brill founded Kroll Ontrack's global high-technology investigation practice. He has an international reputation in the areas of computer/communication security and technology crime investigation. At Kroll, his work has ranged from large-scale information security reviews for multi-billion dollar corporations, to criminal investigations of computer hackers, frauds on the Internet, identity theft, misappropriation of intellectual property, as well as telephone, cellular, and voicemail frauds. Prior to joining Kroll, he was director of the information systems and information security bureau of the New York Department of Investigation, where he served as the senior government official with responsibility for information security, and as a deputy inspector general in the New York City government. Brill received his B.A. and MBA from New York University. He is also an honor graduate of both the United States Army Command and General Staff College and the National Defense University's National Security Management Program.



**Michele C.S. Lange, Esq.**
*Director, Legal Technologies*
Corporate headquarters

Michele C.S. Lange is a director in the Legal Technologies division at Kroll Ontrack Inc. Lange tracks the evolving common and statutory law in the areas of electronic discovery and computer forensics. She also helps practicing attorneys integrate electronic discovery into their case strategy. Lange has published numerous articles and speaks regularly on the topics of electronic discovery, computer forensics and technology's role in the law. Most notably, her articles have appeared in the *National Law Journal*, *New York Law Journal*, and *Corporate Counsel* magazine, as well as on *Law.com*. Lange received her J.D. from the University of Minnesota Law School and her B.A. from the University of Wisconsin - La Crosse. She is admitted to

KROLL ONTRACK

Privacy Policy | Legal Notices | Site Map
Copyright© 2010 Kroll Ontrack Inc. All Rights Reserved

# KROLL ONTRACK

News Center > Expert Bios

# Expert Bios

## Meet Our Team

Employing several hundred attorneys, legal consultants and engineers, Kroll Ontrack has in-depth, unparalleled expertise in electronic discovery, paper discovery, computer forensics, trial consulting, presentation techniques and data recovery relevant to law firms, financial institutions, corporations, government agencies and individuals.

As former practitioners, many of Kroll Ontrack's legal experts have first-hand, front-line experience with large-scale document collection, storage, management and production in a spectrum of legal areas. Add twenty years of data recovery experience, 200 engineers and the most extensive set of proprietary data recovery tools and we have a plethora of subject matter experts in the following areas:

| | | |
|---|---|---|
| Antitrust | Data Erasure | Environmental Law |
| Bankruptcy Law | Disaster Recovery | Intellectual Property |
| Compliance | Encryption | Information Lifecycle Management (ILM) |
| Computer Fraud | E-mail Management & Recovery | Mergers & Acquisitions |
| Data Loss & Recovery | Employment Law | |

### Legal Technology Experts

By keeping their fingers on the pulse of the latest case law developments and trends from the worlds of law and legal technology, Kroll Ontrack's attorneys and legal consultants bring an unmatched knowledge base to help their clients so that practicing attorneys and legal support staff can take advantage of faster, easier and more cost-effective document discovery and management solutions.



**Stephen D. Baird, M.S. CISSP, CISA, CISM, CBCP, CPP**
*Managing Director, Information Security, Computer Forensics & ESI Consulting*
New York office

Stephen Baird delivers integrated functions to organizations encompassing information security, e-discovery, cyber investigations, computer forensics, business continuity, disaster recovery, incident response, IT audit, records management, and privacy. Previously the vice president and chief information security and privacy officer for a large public company, Baird has over 20 years of industry and law enforcement expertise in complex technology and risk mitigation leadership. His vast experience has brought great success with enterprise-wide strategic development and implementation of information risk mitigation and technology initiatives. He has designed and implemented indigenous security architectures across multiple technology platforms on some of the most sophisticated networks and systems in the world. Baird has additionally worked with Fortune 100 corporations on issues related to risk management, compliance, and regulatory matters.

Prior to his involvement in the commercial market, Baird worked in local, state and federal law enforcement, most recently as a Supervisory Special Agent and Division Chief of Computer Crimes for the Department of Defense. He received his M.S. in Information Architecture from Capital College in Laurel, Md., and his B.S. in Economics and Finance from the University of Hartford in West Hartford, Conn. He served as an Adjunct Professor at the University of New Haven in New Haven, Conn. in support of their Criminal Justice program in the areas of computer crimes and modern legal issues.



**Alan E. Brill, CISSP, CFE, CIFI**
*Senior Managing Director, Computer Forensics*
New Jersey office

With more than 25 years in the information security field, Alan Brill is recognized internationally as a leader in his field. Brill founded Kroll Ontrack's global high-technology investigation practice. He has an international reputation in the areas of computer/communication security and technology crime investigation. At Kroll, his work has ranged from large-scale information security reviews for multi-billion dollar corporations, to criminal investigations of computer hackers, frauds on the Internet, identity theft, misappropriation of intellectual property, as well as telephone, cellular, and voicemail frauds. Prior to joining Kroll, he was director of the information systems and information security bureau of the New York Department of Investigation, where he served as the senior government official with responsibility for information security, and as a deputy inspector general in the New York City government. Brill received his B.A. and MBA from New York University. He is also an honor graduate of both the United States Army Command and General Staff College and the National Defense University's National Security Management Program.



**Michele C.S. Lange, Esq**
*Director, Legal Technologies*
Corporate headquarters

Michele C.S. Lange is a director in the Legal Technologies division at Kroll Ontrack Inc. Lange tracks the evolving common and statutory law in the areas of electronic discovery and computer forensics. She also helps practicing attorneys integrate electronic discovery into their case strategy. Lange has published numerous articles and speaks regularly on the topics of electronic discovery, computer forensics and technology's role in the law. Most notably, her articles have appeared in the *National Law Journal*, *New York Law Journal*, and *Corporate Counsel* magazine, as well as on *Law.com*. Lange received her J.D. from the University of Minnesota Law School and her B.A. from the University of Wisconsin - La Crosse. She is admitted to

KROLL ONTRACK

Privacy Policy | Legal Notices | Site Map
Copyright© 2010 Kroll Ontrack Inc. All Rights Reserved

# EXHIBIT E

**Smith, Sheldon**

| | |
|---|---|
| **From:** | Roney, Susan |
| **Sent:** | Friday, February 19, 2010 4:19 PM |
| **To:** | Diane M. Roberts; Joseph J. Manna |
| **Cc:** | Smith, Sheldon |
| **Subject:** | RE: Confirmation needed |

I disagree. (1) There hasn't even been a representation that these particular attachments have not been linked, just that they are privileged. (2) The attachments are clearly described in the-mail messages (which I gave you copies of when we met with the Court on 2/10) and you have already deemed them to be privileged and placed them on a privilege log. Thus, the issue of privilege is ripe for determination at this time.

**From:** Diane M. Roberts [mailto:droberts@lglaw.com]
**Sent:** Friday, February 19, 2010 10:48 AM
**To:** Roney, Susan; Joseph J. Manna
**Cc:** Smith, Sheldon
**Subject:** RE: Confirmation needed

We may need to clarify that then with the judge--I read it that I had until the 24th to advise about the linking of the attachments--and again, until I know if I can even get the attachments off the Diversified system, I cannot see what that small group on the privileged aspect even are to know whether or not we have an issue that would necessitate a motion by either of us. Also, I believe you already have the emails themselves which were on that privilege log correct?

**From:** Roney, Susan [mailto:SRoney@nixonpeabody.com]
**Sent:** Friday, February 19, 2010 10:29 AM
**To:** Diane M. Roberts; Joseph J. Manna
**Cc:** Smith, Sheldon
**Subject:** RE: Confirmation needed

See Court's 2/11/10 Text Order: ... **On or before February 24, 2010: ... (3) the parties shall file motions, if any, concerning the production of the e-mails and attachments plaintiff has identified as privileged.**

**From:** Diane M. Roberts [mailto:droberts@lglaw.com]
**Sent:** Friday, February 19, 2010 10:26 AM
**To:** Roney, Susan; Joseph J. Manna
**Cc:** Smith, Sheldon
**Subject:** RE: Confirmation needed

What motion?

**From:** Roney, Susan [mailto:SRoney@nixonpeabody.com]
**Sent:** Friday, February 19, 2010 10:25 AM
**To:** Diane M. Roberts; Joseph J. Manna
**Cc:** Smith, Sheldon

**Subject:** RE: Confirmation needed

Our motion is due on Wednesday February 24th. Please let us know before then if you agree to produce the attachments. Thank you.

**From:** Diane M. Roberts [mailto:droberts@lglaw.com]
**Sent:** Friday, February 19, 2010 10:14 AM
**To:** Roney, Susan; Joseph J. Manna
**Cc:** Smith, Sheldon
**Subject:** RE: Confirmation needed

It is not a question of having an answer on a change of position. I do not recall taking a position in  the negative as to rpoduction, given what the judge stated concerning the rulings last summer. I did state that I would first have to find out IF we could even get to the attachments given the broken  link problem, which we are working on and hope to connect today with the forensic expert, whose personnel have been sick and/or on vacation this past 8 or 9 days. As soon as I can get an answer we will let you know.

**From:** Roney, Susan [mailto:SRoney@nixonpeabody.com]
**Sent:** Friday, February 19, 2010 10:01 AM
**To:** Diane M. Roberts; Joseph J. Manna
**Cc:** Smith, Sheldon
**Subject:** Confirmation needed

Please confirm for us whether you have changed your position with regard to producing the attachments (photos and PDFs) to the e-mail messages designated on your privilege log dated  August 25, 2009? Thank you.

**Susan C. Roney**
**Partner**

NIXON PEABODY LLP

Key Towers at Fountain Plaza
40 Fountain Plaza Suite 500
Buffalo, NY 14202
P (716) 853-8101
F (866) 283-1398
sroney@nixonpeabody.com
www.nixonpeabody.com

The preceding e-mail message contains information that is confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the message. If you believe that you are not an intended recipient of this message, please notify the sender at (716) 853-8101. Unauthorized use, dissemination, distribution or reproduction of this message by other than the intended recipient is strictly prohibited and may be unlawful.

2/23/2010